```
                    IN THE UNITED STATES DISTRICT COURT
                       FOR THE DISTRICT OF COLUMBIA


     United States of America,        ) Criminal Action
                                      ) No. 22-cr-20
                    Plaintiff,        )
                                      ) STATUS CONFERENCE
     vs.                              )
                                      )
     Tim Levon Boughner,              ) Washington, DC
                                      ) November 8, 2023
                    Defendant.        ) Time:  2:30 p.m.
     _____

                   TRANSCRIPT OF STATUS CONFERENCE
                           HELD BEFORE
                THE HONORABLE JUDGE TANYA S. CHUTKAN
                    UNITED STATES DISTRICT JUDGE
     _____

                         A P P E A R A N C E S

     For Plaintiff:       Joseph S. Smith (By Zoom)
                          UNITED STATES ATTORNEY'S OFFICE
                          880 Front Street, Room 6293
                          San Diego, CA  92101
                          (619) 546-8299
                          Email:  Joseph.s.smith@usdoj.gov

     For Defendant:       Barry Coburn
                          Sarah Schwietz
                          COBURN & GREENBAUM, PLLC
                          1710 Rhode Island Avenue, NW
                          Washington, DC  20036
                          (202) 643-9472
                          Email:  Barry@coburngreenbaum.com
     _____

     Court Reporter:          Janice E. Dickman, RMR, CRR, CRC
                              Official Court Reporter
                              United States Courthouse, Room 6523
                              333 Constitution Avenue, NW
                              Washington, DC  20001
                              202-354-3267
```

```
 1         * * * * * * *P R O C E E D I N G S* * * * * * *
 2              THE COURTROOM DEPUTY:  Your Honor, this is criminal
 3     case 22-20, United States of America versus Tim Levon Boughner.
 4     Counsel, please introduce yourselves for the record, starting
 5     with the government.
 6              MR. SMITH:  Good afternoon, Your Honor.  Assistant
 7     Attorney Joseph Smith appearing by video teleconference for the
 8     United States.  And I appreciate you allowing us -- me to
 9     appear by video today.
10              THE COURT:  Good afternoon.  No problem, Mr. Smith.
11              MR. COBURN:  Good afternoon, Your Honor.  Barry
12     Coburn and Sarah Schwietz for Mr. Boughner, who is here in the
13     courtroom.
14              THE COURT:  Good afternoon.  Good afternoon,
15     Mr. Boughner.
16              Let me first start by saying does anyone believe the
17     next portion discussing the report needs to be under seal?  It
18     does discuss Mr. Vaughn's mental health evaluation.  But it's
19     competency, so I'm not sure if it does.
20              MR. COBURN:  I'm not sure it does, Your Honor.  I was
21     just going to say, the government has the report.
22              THE COURT:  We don't need to go into details.
23     Everybody has the report.  Has everybody seen the report?
24              MR. COBURN:  Yes, Your Honor.
25              THE COURT:  Mr. Boughner, I don't know if you've seen
```

1   the report, but there was a report done by the screening that
2   you had, and the report basically says that they're unable to
3   make a conclusion as to your competency.
4          So, here's where we are:  I ordered a preliminary
5   assessment of Mr. Boughner's competency by a clinical staff
6   member from the D.C. Department of Behavioral Health on October
7   30th.  I received the report of Dr. Teresa Grant, dated
8   November 6th, 2023.  Due to COVID-19 conditions, Dr. Grant
9   evaluated Mr. Boughner via Webex teleconference on November
10  2nd.
11         The report ultimately concludes that Dr. Grant is
12  unable to form an opinion as to -- on the defendant's
13  competency to stand trial.  The report offered no clinical
14  recommendation at this time.
15         Dr. Grant also mentioned, it was noteworthy that she
16  consulted with defense counsel as it related to Mr. Coburn's
17  particular concerns.
18         Mr. Coburn, you had mentioned at the last status
19  hearing that you had spoken with Dr. Grant and had some
20  information that could inform next steps.  I wanted Mr.
21  Boughner to be present for that.  Now that we're here, do you
22  want to make that proffer?
23         MR. COBURN:  I essentially just told Dr. Grant what
24  I've already told the Court, Your Honor.
25         THE COURT:  Okay.

1       MR. COBURN: I'm subject to the same, you know,
2   privilege constraints as before and stayed within those lines.
3       THE COURT: Okay. I continue to have concerns about
4   Mr. Boughner's competency. And Dr. Grant's report is not
5   surprising because -- as I've said to you, Mr. Boughner --
6   Mr. Boughner is an intelligent person. And over the course of
7   the -- now, many of the earlier times I saw him were by video
8   because he was being held in Virginia -- it is only after
9   Mr. Coburn brought it up and after I had had an extended
10  colloquy with Mr. Boughner and then looked back at previous
11  transcripts and communications from the two previous counsel --
12  all of whom, as I've said at the last hearing were very
13  experienced counsel -- that I realized that there might be a
14  problem with regard to competency. And my subsequent
15  interactions with Mr. Boughner have reinforced that concern.
16      I know Mr. Boughner has said before and continues to
17  say he just wants to sort of plead guilty and move on and get
18  on with his case. But I can't accept a plea from somebody who
19  may not be aware of the consequences and ramifications or be
20  able to accept the proffers and the concessions they have to
21  make in a plea, and that I -- I can't do it. I'm not allowed
22  to do it under the law, and if I were to do it, it would -- it
23  could have serious repercussions later on.
24      But I haven't -- I have ethical obligations also and
25  legal obligations and as long as I have this concern with

1    regard to Mr. Boughner's competency, I can't accept a plea from
2    him.  And he does not want Mr. Coburn.  And I think if he gets
3    another lawyer, if I appoint him a fourth set of counsel, we're
4    going to have the same problems arising.
5           And, so, I don't think it -- I don't think
6    Mr. Boughner at this time -- well, I have doubts and concerns
7    as to Mr. Boughner's competency to ask for a new lawyer and to
8    go any further.
9           So having said all that, do the parties have any
10   proposals for me?
11          MR. COBURN:  Um --
12          THE COURT:  Because I guess the next step would be to
13   have a lengthier evaluation done.
14          MR. COBURN:  Understood, Your Honor.  It's a
15   frustrating thing procedurally in this situation, you know, for
16   a lawyer, where Ms. Schwietz and I are, just because -- I mean,
17   we certainly have, you know, views and opinions about this.
18   But, you know, he's still the client and so --
19          THE COURT:  I mean, given the time and expense that
20   it would take to send Mr. Boughner to Lexington or Butner for a
21   formal evaluation, I'm almost -- I mean, one thing to explore
22   is whether you all want to -- or, you want to employ a private
23   psychologist or psychiatrist to do an evaluation here.  And,
24   you know -- but, again, I'm not sure if that person would have
25   the extended exposure to Mr. Boughner that is needed to

1    understand the issue here.
2            MR. COBURN:  I agree with the concerns that Your
3    Honor just expressed, and it's a --
4            THE COURT:  I'm sorry?
5            MR. COBURN:  No, I -- I mean, if Your Honor were
6    inclined in the direction of utilizing the services of a
7    forensic psychiatrist locally, I know a couple of people who I
8    have very high confidence in who, if they had time, I know
9    would be very interested in this.
10           But I think the problem is exactly what Your Honor
11   said.  I mean, they would have to, you know, visit him, and the
12   visit might last an hour or two, as opposed to, you know, if
13   he's --
14           THE COURT:  For days.
15           MR. COBURN:  If he's inpatient, that's different.
16           THE COURT:  The issue then, of course, would be if
17   there were a competency issue to be -- if it was found that he
18   was not competent, he would still have to then -- we still have
19   to decide if he could be made competent and transport him to a
20   facility where he could receive treatment, which would still
21   take the same amount of time.  And as I've said and continue to
22   say, Mr. Boughner has been detained.
23           Now, Mr. Boughner, the time that you have spent held
24   in this case does count towards any sentence that you will get
25   in this felony case.  So it's not -- in other words, it's not

```
 1    dead time.  You're getting credit for a sentence that you would
 2    get.
 3              THE DEFENDANT:  And I understand that.  And, you
 4    know, the plea --
 5              THE COURT:  Pull the microphone --
 6              THE DEFENDANT:  The plea was for 40-some months.  I
 7    almost got that in already.  You know, I don't get what the
 8    whole issue is --
 9              THE COURT:  The plea was for --
10              THE DEFENDANT:  It's not like I'm going to end up
11    doing a bunch more time than -- well, I could.  Realistically,
12    I could.  But, I don't understand why this is becoming such an
13    issue.
14              THE COURT:  I know you don't, but I --
15              THE DEFENDANT:  I don't know why we went -- asked for
16    the plea to be reinstated, if we weren't -- if he wasn't going
17    to let me --
18              THE COURT:  Well, one thing --
19              THE DEFENDANT:  -- sign the plea.  I don't get --
20    this is like -- this is becoming very interesting.
21              THE COURT:  I understand. One of the problems is you
22    have now sought to get rid of three lawyers.
23              THE DEFENDANT:  Well, just --
24              THE COURT:  Hold on.  Let me finish.  You sought to
25    get the three very, very experienced, respected lawyers -- all
```

1    three who are very experienced, they aren't newbies.  These are
2    experienced criminal counsel, criminal defense counsel.  All
3    three have raised issues about your competence.  And I, having
4    now spent a longer time with you in this courtroom, have my
5    concerns, too.
6            Now, we're not doctors.  I'm not a doctor.  But I
7    cannot go forward and take a plea from someone who may -- and
8    Mr. Coburn can't in good faith go forward and have you take a
9    plea when there may be issues regarding your competence.  So we
10   need to get that squared away.  And I can't let him withdraw
11   and appoint you a new lawyer if this is still an issue.
12           Mr. Smith, what's your position?
13           MR. SMITH:  Your Honor, I think that -- I know
14   Dr. Grant had a limited amount of time.  There appears to be --
15   certainly this is something more for the Court and for defense
16   counsel.  They're in a better position, having been subject to
17   information that the government isn't.  There's nothing from
18   the report that indicates he has a history during his present
19   confinement at all.  And he denies it.
20           I had an opportunity to talk to Dr. Grant briefly by
21   telephone after the report and she said she was in a difficult
22   position to come to a conclusion because of the lack of certain
23   background information.  And I know Mr. Boughner has had some
24   prior contact with law enforcement and may have, you know,
25   family members who could opine on that.

1                  But in the limited amount of time, it's difficult for
2      any clinician to get a full picture when most of it is just
3      coming from Mr. Boughner.  So if there's a way to get, you
4      know, an opinion -- it's hard to make a decision to give the
5      Court when the opinion on the preliminary was there was no
6      opinion.
7                  So if he were sent somewhere and then there was an
8      evaluation and if he were found competent, he could come back.
9      If he were found incompetent, I don't know if we would have to
10     bring him back for an in-person hearing to then send him back
11     to somewhere like Butner.  That would be an unfortunate delay.
12     But I don't know if there would be a procedure in place --
13                 THE COURT:  I've had competency proceedings remotely
14     where the person was being treated.  My concern is just the
15     time.
16                 THE DEFENDANT:  Did I hear Butner?
17                 THE COURT:  Yes.
18                 THE DEFENDANT:  Oh, what's going on here?  All right.
19     Like, for real, what's going on here?  I would be going to
20     Butner?
21                 THE COURT:  Well, there are two places, Mr. Boughner,
22     two federal institutions where they can evaluate your
23     competency; one is Lexington and one is Butner.  What is your
24     concern?
25                 THE DEFENDANT:  No, for real, what's -- you know,

1   this is getting a little unreal now.  Can we -- someone be
2   honest with me here?
3           THE COURT:  Absolutely.  I mean -- nobody here is
4   lying to you, Mr. Boughner.
5           My concern is that given your past relations with the
6   three sets of lawyers you've had, I don't have any reason to
7   believe you won't find the next lawyer to be unsatisfactory as
8   well.  You've fired three experienced sets of lawyers.  And
9   each one of them has raised issue about your competency --
10          THE DEFENDANT:  Well --
11          THE COURT:  -- and I can't ignore that.
12          THE DEFENDANT:  Nobody seemed to be interested in
13  defending me, in my defense.
14          THE COURT:  That's actually --
15          THE DEFENDANT:  You know, they were -- that was their
16  job, you know.  And this is my life and nobody seemed to be
17  interested --
18          THE COURT:  Well, this is the thing --
19          THE DEFENDANT:  -- you know.  But, no, that's fine.
20  No, I'm just trying to figure out what -- now it's Butner.
21          THE COURT:  No, Mr. Boughner --
22          THE DEFENDANT:  No.  Okay.  No, there's a lot going
23  on other than this.  You know, I was a willing test subject,
24  guinea pig, the whole -- you know, there's a lot going on and
25  I'm just trying to put all the puzzle pieces together.

1        THE COURT: What test subject are you talking about?
2    What guinea pig?
3        THE DEFENDANT: No, there's a lot going on other than
4    just January 6 and the whole nine yards. No, there's a lot
5    going on.
6        THE COURT: All right.
7        THE DEFENDANT: No, I'm just trying to figure it all
8    out. Now it's Butner. Now it's -- everybody's so trying to
9    say I'm crazy now, you know. This is --
10       THE COURT: No, Mr. Boughner --
11       THE DEFENDANT: It is what it is.
12       THE COURT: -- the concern is not that -- nobody is
13   saying you're crazy. The concern is that we need to make sure
14   you understand the full consequences of what you're doing by
15   pleading guilty and the consequences of pleading guilty.
16       THE DEFENDANT: No, believe me, I understand it all,
17   you know. Understand it more and more every time I come in
18   this courtroom. But --
19       THE COURT: All right. Have you by any chance -- and
20   I'm sure you haven't -- but have you by any chance, Mr. Coburn,
21   been able to find out from the marshals how long it would take
22   to get him to one of these places?
23       MR. COBURN: I haven't checked that in connection
24   with this case, Your Honor, but my -- I have sort of a distant
25   recollection that the process through Butner takes about 30

1     days.
2            THE COURT:  Yeah.
3            MR. COBURN:  I could be wrong.
4            THE COURT:  Can we get -- who is it in the marshal's
5     office that is in charge of transport?  Is it Mr. --
6            THE MARSHAL:  Supervisor Brown, ma'am.
7            THE COURT:  Deputy Brown.  Can we get someone from
8     there in here?  I hate calling people out at, you know, the
9     last minute.
10           THE COURTROOM DEPUTY:  I can call.
11           THE COURT:  What they've been able to do in the past
12    is give me an estimate of the waitlist, how long we're talking.
13           (Pause.)
14           THE COURT:  I tell you what, let's recess for a few
15    minutes and see if we can get someone from the marshal's office
16    in to let me know how long we would be talking about, and then
17    we can resume.  I'm thinking about ten minutes.
18           Does that work for you, Mr. Smith?
19           MR. SMITH:  Yes, Your Honor.  I can just stay in
20    the -- whatever the -- on the Webex, or this Zoom, if it works,
21    or I can call back.
22           THE COURT:  Mr. Coburn, what about you?  Do you have
23    to be somewhere shortly?
24           MR. COBURN:  No, I'm fine.
25           THE COURT:  Let's recess for about ten minutes, until

1   we can get someone in here.
2           (Recess.)
3           THE COURT: Okay. We're still on the record in
4   *United States versus Boughner*. I have spoken to Deputy U.S.
5   Marshal Brown, who tells me that there are a number of
6   places -- not just Butner, but there are a number of BOP
7   facilities that could do this evaluation. Which one
8   Mr. Boughner would go to really depends on the medical staffing
9   at that particular facility. But there are quite a few.
10          He told me that if I were to get a study order issued
11  and set a short status for approximately November 20th --
12  although that's Thanksgiving week -- he could then tell me how
13  long it would take to get him there. Usually they can get
14  Mr. Boughner within 30 days to a facility, but sometimes it's
15  shorter, depending on where he's going.
16          So that is what I'm inclined to do, unless anybody
17  has another suggestion.
18          MR. COBURN: No, Your Honor. Thank you.
19          THE COURT: Mr. Smith?
20          MR. SMITH: No, Your Honor. That makes sense to the
21  government.
22          THE COURT: All right. I will then issue the study
23  order. And let us then come back -- now, I'm away next week.
24  I'm back in town on the 18th. I mean, I could do this by Zoom
25  while I'm away, but he said, you know, that would be probably

```
 1    too soon.  Is anybody going to be around on the 20th of
 2    November?  You could do this by Zoom, Mr. Smith.
 3              Mr. Coburn?
 4              MR. SMITH:  Yes, Your Honor, I'm available that week.
 5              MR. COBURN:  I'm out of town that week, but -- I'm
 6    first in New York and then in LA, but I can certainly do it by
 7    Zoom, Your Honor.
 8              THE COURT:  And can -- I'm sorry, what is your
 9    name -- Schwietz?
10              MS. SCHWIETZ:  Schwietz.
11              THE COURT:  Could Ms. Schwietz be here?
12              MS. SCHWIETZ:  I'll be in that deposition.
13              MR. COBURN:  Could I have the Court's indulgence just
14    for a moment?
15              THE COURT:  Okay.
16              (Pause.)
17              MR. COBURN:  That's going to work, Your Honor.
18              THE COURT:  The 20th?
19              MR. COBURN:  Yes, for Ms. Schwietz.
20              THE COURT:  Okay.  You can be here?
21              MS. SCHWIETZ:  (Nods head.)
22              THE COURT:  All right.  Were you planning,
23    Mr. Coburn, to participate remotely, if that's --
24              MR. COBURN:  If the Court is amenable to it,
25    absolutely.
```

1     THE COURT: No, I don't require you to. I mean,
2  Ms. Schwietz can -- we're just going to get an update on the
3  timing and so on.
4     MR. COBURN: I would just as soon log in, if that's
5  possible.
6     THE COURT: Yes. Let's set this down for Monday,
7  November 20th. I have -- oh, that's not me. The Court has an
8  appellate argument in my case. I can do it at 10 a.m.
9     MR. COBURN: Absolutely, Your Honor. That will be an
10 early morning for Mr. Smith, but --
11     THE COURT: Sorry, Mr. Smith.
12     MR. COBURN: But I think he gets up earlier than that
13 anyway.
14     THE COURT: I can do it at 11.
15     MR. SMITH: Whatever is convenient for the Court and
16 opposing counsel. I'm up --
17     THE COURT: Where will you be, Mr. Coburn?
18     MR. COBURN: I'll be in New York at that point. It
19 will work fine for me at any --
20     THE COURT: Let's do it at 11. So that's November
21 20th, at 11 a.m. Mr. Coburn and Mr. Smith can participate
22 remotely, and Ms. Schwietz will be here. All right.
23     So, Mr. Boughner, I've set a status hearing to find
24 out how long it would take to get you to a place that could
25 evaluate you. And we'll find that out on the 20th of November.

```
 1      You're not going anywhere between now and then.  Okay?
 2              THE DEFENDANT:  All right.  Now, I do have people out
 3      there in the process of finding me an attorney.
 4              THE COURT:  Okay.
 5              THE DEFENDANT:  Now, I want to -- and I have people
 6      out there trying to find someone local about a polygraph.  But
 7      I was told I needed --
 8              THE COURT:  Polygraph --
 9              THE DEFENDANT:  I would like this for my defense,
10      for --
11              THE COURT:  Okay.
12              THE DEFENDANT:  You know, it can answer a lot.  You
13      know.
14              THE COURT:  All right.
15              THE DEFENDANT:  This has been pretty --
16              THE COURT:  You do know poly --
17              THE DEFENDANT:  -- surreal and, you know, this is --
18      it would be kind of cool to have backup.  You know, a lot of
19      people -- when I talk to people, they don't believe this is
20      happening, so I would like to have this.
21              THE COURT:  You need to be careful who you talk to in
22      jail, because they're in jail, too, so --
23              THE DEFENDANT:  I'm in a hole, so I talk to myself --
24              THE COURT:  Polygraph evidence is not admissible in
25      court.
```

```
 1                 THE DEFENDANT:  No, no, I know it, but -- you know.
 2                 THE COURT:  If you want to hire your own --
 3                 THE DEFENDANT:  Since I've been so full of shit and
 4     crazy, you know, I might as well have something that can
 5     somewhat clear it up a little bit, you know.
 6                 THE COURT:  Okay.  If you want to hire your own
 7     lawyer, you've always been free do that.  But until then, I'm
 8     not going to let Mr. Coburn withdraw because I'm not sure and
 9     certain that you're in a position to make that decision.
10                 THE DEFENDANT:  Well, I hope by the 20th I can -- I
11     got the whole attorney --
12                 THE COURT:  Okay.  Just let me know.  If you do, they
13     need to enter an appearance by then.
14                 THE DEFENDANT:  Um -- oh, this is going to be tough.
15     Now, can this be something that can be done over the video at
16     the jail?  Or do I have to come here on the 20th?  Can we do
17     the status hearing over --
18                 THE COURT:  You know, we can.  That would make it
19     easier for everybody, I guess.  But, you know, sometimes the
20     jail is -- yeah, let's do it remotely.  We can do the whole
21     thing remotely, yes.
22                 THE DEFENDANT:  See how I'm so clear-headed right now
23     and that?  Yeah, because I haven't ate in four days.  Once I
24     figured out that food is medicated and it messes with your head
25     and you don't think clearly, I realize that, oh, well, maybe
```

```
 1    this could be a issue, maybe this could be --
 2              THE COURT:  Mr. Boughner --
 3              THE DEFENDANT:  -- some of the issues we've had --
 4              THE COURT:  Mr. Boughner, why do you think the food
 5    is medicated?
 6              THE DEFENDANT:  -- 100 percent.
 7              Why?  Because I felt it in my head.  I knew something
 8    was up.  And when you lay there and you listen to everybody in
 9    the hole and how crazy they're acting, it's like, What is going
10    on here?  Figured out it was the food.  Boy, it's amazing.  And
11    then you get in the law library and you see how many people try
12    to sue the jails for medicating the food, you know, maybe --
13    you know, that's pretty interesting.  You know, I learned a
14    lot.  But, no, I'm bipolar, that's what it is; it can't be
15    that.
16              THE COURT:  All right.  Well, I'm not a doctor, but
17    I'm hoping a doctor will be able to give me some information.
18              All right.  Thank you.  I'll see you all remotely on
19    the 20th.  Thank you.
20              THE DEFENDANT:  Thank you, Your Honor.
21                              *   *   *
22
23
24
25
```

```
1              CERTIFICATE OF OFFICIAL COURT REPORTER
2
3       I, JANICE DICKMAN, do hereby certify that the above and
4    foregoing constitutes a true and accurate transcript of my
5    stenographic notes and is a full, true and complete transcript
6    of the proceedings to the best of my ability.
7                       Dated this 18th day of January, 2024
8
9
10                      /s/_____
11                      Janice E. Dickman, CRR, CMR, CCR
                        Official Court Reporter
12                      Room 6523
                        333 Constitution Avenue, N.W.
13                      Washington, D.C.  20001
```